The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Be seated please. The next case we'll hear this morning is the United States v. Sanders. Mr. Lawrence. Yes, may it please the Court, I'm Larry Robbins for Appellant Zackary Sanders. In the time available this morning, Your Honors, and subject of course to the Court's questions, I'd like to address three of the issues that we've raised in this appeal. The Fourth Amendment challenge, the jury instruction on lascivious exhibition, and if time permits, the way in which the word use was construed by the District Court. Let me start with the Fourth Amendment issue if I might. In this entire 36-page search warrant affidavit, there is but a single sentence accusing Mr. Sanders of having done something wrong. That sentence appears in paragraph 23 of the search warrant affidavit, and it says that on such and such a date, someone using a certain IP address, quote, accessed sexual abuse and exploitation material via a website. Now if that representation had been true, this would be a much tougher case for me. After all, if Mr. Sanders had actually accessed child pornography via the website, he would have had to register, he would have seen descriptions of the material, and he would have downloaded the material itself. But that's not what the three TIP documents said. The first of the three TIP documents may be found at SJA 1994. It stated that a particular IP address, quote, was used to access online child sexual abuse material with an explicit focus on the facilitation of sharing child sexual abuse material. No sentient English speaker would say that sexual abuse material, as opposed to a website containing sexual abuse material, had an explicit focus on the facilitation of sharing child pornography. Rather, an English speaker would read that first TIP document to say that the IP address had accessed a website, and that it was the website that facilitated the abuse material contained with, that facilitated access to the abuse material contained therein. But if there were any lingering doubt about what the first TIP document is, said the third TIP document, and by the way, all three, the government acknowledged below, all three TIP documents constitute the TIP, if you will. The third TIP document dispelled any lingering doubt. It said that it was the site, not the actual pornography, that had the explicit focus on the facilitation of sharing sexual abuse material. That's at SJA 1998, a document that you will not find any discussion of in the government's brief, and there's scarcely any wonder about why. Now, if it were the site that Mr. Sanders accessed, as the TIP documents fairly say, you know, when you focus on one word like the site, I understand your whole argument. Your argument is the site doesn't necessarily mean he looked at child pornography. But I listen to you, but you are trying to attribute some kind of English interpretation that any common sense person reading that would read differently. It seemed to me that what the TIP is, that somebody here is accessing child pornography and laid it out pretty, I thought, pretty clearly without any argument. I mean, you just read it. The syntax is not what I would clear. It's almost telegram-type syntax. You can continue your argument, but your suggestion is all the TIP was is that he accessed the site and that there's no other indication that he was accessing child pornography. I just don't think you can make that case with a straight face. Well, I hope my face is as straight as can be, because that's precisely what I mean to say, Your Honor. The first TIP document... Your point is that the affidavit doesn't show probable cause? My point... Is that your point? No, not exactly. Well, you're raising a Fourth Amendment. Yes. What I'm saying is that... What part of the Fourth Amendment is contravening? What I'm saying, Judge King, is that paragraph 23, the only paragraph that charges him with wrongdoing, is a blatant... Well, the search warrant's not a charge. I'm sorry, Your Honor? The search warrant is not a charge. An indictment is a charge. Yes. Or a complaint is a charge. Yes. But a search warrant's not a charge. That's correct. The search warrant gives access to them, that they're going to the site, a home in this instance, and conducting a search. Of course. And a seizure, if they need to. Yes, that's of course correct, Judge King. But my point... They have to show probable cause, right? Yes, but this is a Franks against Delaware argument. Our contention, Judge King... Your contention is a Franks argument? Yes. That you're saying the officer who made the affidavit falsified the affidavit? Yes. I am saying... So you're not saying that the affidavit doesn't show probable cause? No. If... So you admit to probable cause, but you... Is that right? Yes. All right. But let me be clear... So you don't claim the magistrate judge or the judge that issued this thing made a mistake? No. What? The affidavit's good, and the judge acted properly. Well, the affidavit asserts that he went and downloaded pornography. If that were true, I'd have a hell of a time here this morning. But it isn't true. If you look... And Judge Niemeyer, I'm sorry if this is not computing for you. But if you look, Your Honor, at the third tip document, they couldn't have been clearer when they say that it was the site that facilitated access to pornography. Didn't the affidavit quote the tips? Well, no. Actually, it didn't. They didn't quote the tips? No. They paraphrased in a way that was misleading. They claimed he accessed pornography via a website. If you go back and read the tip documents, you will not find a hint of that. But doesn't the first S.J.A. 1994 use the words that he accessed exploitation material? Yes. But if you read that, Judge Benjamin, along with the third tip document, and along, by the way, with every internal document that the FBI created itself, including the internal memo of the affiant and the memo that set out the plan for the actual search in February 2021, if you read all of those documents, I think you cannot fairly resist the conclusion that what the foreign tip said was somebody with this IP address has gone to a website. I have reproduced the website homepage. It is plain vanilla. Yeah, but in S.J.A. 1994, it says on this date, May 23rd, the IP number was used to access online child sexual abuse and exploitation material. And isn't that what he put in 23? But if you keep reading the tip. Are you referring to 1994? Yes. Okay. What it says is, and the language, I mean, I will acknowledge, Judge Benjamin, that the syntax is, as Judge Niemeyer put it, a little garbled. But it's clearly explained in the subsequent tip documents. And you've got to read them all together because that constitutes the tip. What the document says, it said that somebody with an IP address, and here's the full text of the tip, was used to access online sexual abuse material with an explicit focus on the facilitation of sharing child abuse material. I suggest that what clearly was intended by that tip, but especially as qualified by the third tip document and all the internal FBI documents, is that this IP address accessed the website and the website only. And it's the website that actually facilitates the sharing of child abuse material. Let me go back to the tip. Did the tip include this language? That the IP address had been used to access online child sexual abuse and exploitation material with the explicit focus on the facilitation of sharing child abuse material, images, links, and videos, emphasis on BDSM, hurt core, gore, and death-related material, including that of children. The first tip document had those words. Okay, it seems to me that should end the matter because it simply says they're giving a tip that he used the access line online to access online child sexual abuse and exploitation material. I don't understand how that could be clearer. Well, Your Honor, I don't want to... Just tell me what that means. He used that address used to access online sexual abuse and exploitation material. The tip says... That's what it says, right? It has those words, but... That's the affidavit. No, that's actually the tip. That's the tip, okay. In the affidavit, it says he accessed pornography via a website. Those words are not there. It's the same thing. He accessed the material, exploitation material. Now, what are you arguing? Your Honor, I am trying to make the point, and my time is dwindling, and there are two other areas I'd love to get to. What I am trying to say is that the sentence... constitutionally defective. That's what you're trying to tell us. I'm trying to say that the affiant misrepresented the three tip documents that must be reviewed as a whole, and when they are reviewed as a whole, it is clear that what the foreign government said was this IP address went to a website, and it's the website that facilitates access to pornography. That's what the tip documents say when you read them together. Respectfully, Judge Niemeyer, you're taking the first tip document out of the context of the three tip documents. The other documents didn't say the first one was wrong. They just added material. The first document is all they really needed. Agent Ford got this. He knows this man, based on the English intelligence, he used access to child sexual abuse and exploitation material, and they actually pointed out the explicit focus of the material, being the sadistic and child abuse and all that other stuff. I didn't understand a couple of the words. I don't know what hurt core means, but regardless, it's as explicit as it can get is that their intelligence said he has exploited, he has accessed that material. Now, you say, you go to a third tip and say, well, he accessed a website to get that material. They didn't suggest that that contradicted this at all. Your Honor, I see that I've burned through a lot of time on a point that I'm evidently not persuading your Honor of. If you don't mind, I'd like to go to the next argument rather than devote any more time to a colloquy that does not seem to be productive. For me. I think the next point we want to make is that every count in this case turns on the meaning of lascivious exhibition. In this case, the defense asked, the judge gave a set of factors. They're sometimes called the dust. Now, you're going to the trial now. Yes, Your Honor. You're saying you didn't get a fair trial. I'm saying that the instruction. Well, you say that search was bad. Yes. But you're moving from that and you're going to attack the trial. I'm going to advance. Bad instruction. A bad instruction. Yes, Your Honor. One bad instruction. An instruction that is common to every count in the case. And it said, here are the factors that you can consider for purposes of whether there is lascivious exhibition. And one of the factors is whether the subjects were nude or partly clothed. The defense asked the judge, please tell the jury that nudity alone cannot constitute lascivious exhibition. And that. Was there any argument you made at trial that this was merely nudity, pictures of mere nudity alone? Well, there was. We objected to the instruction. I'm asking you a question. The question is, did you make any argument during the trial, whether through evidence or in closing argument, that these pictures merely depicted nudity? Well, there was plenty of argument about that subject from both sides. I can recite a long list of places where the government emphasized to the jury at summation and rebuttal that these subjects were nude. And the judge. They were nude. They were told to masturbate. They did masturbate. They were told to hit their genitalia. They did hit their genitalia. Is this what you're talking about, that mere nudity? It seems to me we're talking about explicit sexual conduct depicted online. I don't know where you're heading. Well, maybe I could be clearer on where I'm heading. What I'm saying, Your Honor, is that the judge invited the jury through his instruction. Did you object to the instruction? Absolutely. Let me ask you this, because I believe what you were asking or what your argument is, is that the judge should have used this Healy case from the D.C. Circuit. No, no. Well, I understand that. We're making a slightly different argument. What we're saying, Judge Benjamin, is that by telling the jury, here are the factors. You can use any one you want. You can give them any weight you want. And I will not tell the jury, notwithstanding this court's courted decision, which holds that nudity alone does not constitute a lascivious exhibition. I understand. And that's a good point. If we were having a case of child pornography where the videos or the images were of a four-year-old nude child running on the beach, and there was some perverted man who loved that and subjectively was turned on by that, it seems to me your point is well taken. The mere nudity is not enough. And I think we've made that clear, and you wanted to make that clear, too, because that's one of the DOST factors. Yes. Okay. And you were worried that one of the DOST factors would lead to a conviction where otherwise it would not have occurred. Correct. But my whole point is, in this case, we're not even with that type of issue. We don't have depictions where they're just mere nudity. These are clearly interactive pictures of young minors engaged in explicitly sexual conduct at the direction of the defendant. Respectfully, Your Honor, that might be a valid point if I were making a sufficiency argument. Of course you are. But I'm not. The question goes, why is it important at all? The DOST is around. The DOST may not be the best. DC has a point to make in their opinions. I agree. And I agree with your argument that mere nudity is not enough. We've said that. Mere nudity is not enough. Yes. But it's like we're arguing on the sideline. There's an imperfection in the trial, maybe, which had no implication because there was never a contention that these pictures involved mere nudity. Forgive me, Judge Niemeyer, but I fear that you're looking at that question through the wrong end of the telescope. If, as I contend, the jury was invited to convict on nudity alone, if that was an option, which it plainly was, then the question is, has the government shown that it's harmless because there is no way that a rational jury could have found my client guilty based on nudity? I don't have to contend that that's the only way he could be convicted. They have to prove— No, you're ignoring all the DOST factors. The DOST factors overlap, and they add the one you're talking about, and it could be that your argument is a very legitimate argument. My whole point is there is a suggestion. We're talking about a single instruction which appears to have a component which appears to be totally irrelevant to this case. Well, I'll just sum up with this. The jury was invited to take any factor on that list, give it whatever weight it wanted, and convict on that basis. One of them is nudity alone. That is impermissible, and the burden, therefore, falls to the government to say that that couldn't be the basis on which they convicted, and they have not made that argument, much less carried that argument. They haven't even made it. All right. Why don't we hear from them, because we've gone over here several minutes, and you have some rebuttal. We'll bring you back on rebuttal. May I just ask, Your Honor, when I do have that rebuttal, can I get to the use issue at all, which I have not had a chance to do this morning? What's the use issue? The question is, and this may sound a little bit familiar from a preceding argument the court heard today, that the word use was given too broad a meaning, and as a consequence, large swaths of evidence and witnesses were kept. You mean this is in an instruction? Yes. All right. Thank you. We'll hear from that on rebuttal. All right. Mr. Adias.  Good morning, and may it please the Court. I'd like to respond to something the defendant just said with respect to the lascivious exhibition instruction. Defense counsel said that all the counts in this case rely on the definition of lascivious exhibition, and that's just wrong. Keep your voice up, or keep it in the – pull the microphone to you. Defense counsel – Better keep your voice up, because I hear you can speak louder. Thank you. Defense counsel said that all the counts in this case relied on the definition of lascivious exhibition, and that is just wrong. There's only one set of counts in this case. That's counts 4 and 10, which the government relied on the definition of lascivious exhibition. All the other videos – You're saying there are two counts that relied on – Exactly. – lascivious exhibition. One minor, two counts. Counts 4 and 10. Those are the match production and receipt counts. All of the other counts relied on other forms of sexually explicit conduct, specifically sadomasochistic abuse, simulated anal-genital intercourse, or just plain masturbation. Those are all ways – all different definitions within the statute, separate and apart from lascivious exhibition. Counts 1 and 7 and 2 and 8 involved one video a piece. Those are the testicle slapping videos. Those are argued to the jury as being sadomasochistic abuse. Both counts 1 and 7 and 2 and 8, no response from the defendant. Counts 3 and 9, there were three videos in those counts. One was one of the testicle slapping videos. It was argued to the jury as being sadomasochistic abuse. The other was a straight-up masturbation video, which was argued as being masturbation right under the statute. And the other was a video of a minor with a dildo, which was argued to the jury as being simulated anal-genital intercourse. You're arguing that his points only went to two of the 12 counts. Yes, I think that – But as to those two, do you contend there was no error, or that any error was harmless, or what's your position? I don't think there was any error at all. No error? No error. The video at issue in counts 4 and 10 is the video of the minor. His argument went to the instruction. Yes, and the video – so I'll talk about the video, and then I can get to the instruction. The video is the video of the minor in the bathtub. That's counts 4 and 10. That's the only video. Again, this is right out of the government's closing argument. The government went count by count, video by video, and told the jury, look at this exhibit, look at this video, and here's how it satisfies the statutory standard. This is the video of the minor in the bathtub. He's fully naked. His genitals are visible. At some point, he pans the camera up to his lips and whispers that he's a dirty F-word and the product of Master Zack for the rest of his life. That video has all the trappings of the video that this court found lascivious in court aid. Like the video in court aid, it's the product of an adult male's direction. And this video has the added benefit of the degrading commentary that the defendant asked the minor to state in the video. As to the instruction, the district court instructed the jury that whether an exhibition of the pubic area or genitals constitutes sexual explicit conduct, it has to be lascivious. And then it said, whether something is lascivious, it depends on the overall context. And then the court listed all the dos factors, the focal point, the setting, in this case a bathtub, among other factors, including whether the image was designed to... Just keep your voice up. You're tending the clock. We're across the room from you. Whether the image was designed to... Does that instruction have a number? I don't recall a number. You don't recall a number. Okay. Whether the image was designed to elicit... Was any objection to the instruction preserved? I believe the defendants preserved their instruction. I'm sorry? I believe the defendants preserved... You don't? I do. You do believe. You concede, the government concedes they preserved their objection. Yeah, the defendants have been litigating this issue. That's what I want. I wouldn't dispute that they preserved this issue. I'm trying to figure out what the standard is here. Sure. After listing the dos factors, the district court then concluded by saying that ultimately you, the jury, have to decide whether a depiction is lascivious based on its overall content, not the private fantasies... And the jury so found. And the jury so found. And we look at the facts now in the light most favorable to the prosecution. That's correct. The defendant has asserted here that this is not a sufficiency challenge. It's really just a plain instructional error challenge. I'm not sure that's quite correct. I think they bleed into each other. I don't think there was an error with respect to the instructions. And I think if the court looks at it from the perspective of sufficiency, that the video here has... What about the... Just to focus a little on the argument, if I understand that's being made, is that the dos factors are a collection of factors that can be looked at to determine lasciviousness. And one of them is the nudity of the subject. His argument is that the jury could merely be looking at a nude picture and therefore convict. What's your response to that under the instruction? Sure. So again, the snippet that the defendant cited in his briefs is a bit where the government highlighted in its rebuttal argument. The defendant receiving pictures of a minor's naked genitals after he had asked for them to shave. That specific passage goes to counts two and eight. That's not even a count that the government argued as being lascivious. That's one of the testicle flapping videos. So I just don't think there's any chance that the jury in this case looked at that count and concluded it was lascivious when the government didn't even argue it was lascivious. Argued to the jury that it was sadomasochistic abuse. Do you think the dos factors are a fair description of finding lasciviousness? Yeah, I do. I think they're just a tool to helping the jury decide whether something is lascivious. I also don't think that the dos factor that the defendant focuses on, at least in his briefs, which is the factor which asks whether the image was designed to elicit a sexual response from the viewer, I don't think that's meaningfully different from the way this court defined lascivious exhibition in Cortate. The court defined lascivious exhibition in Cortate as one which displays, in order to attract notice to the genitals or pubic area, in order to excite lustfulness or sexual stimulation in the viewer. And this court applied that in Cohen to an image of an erect penis in the context of sexually charged conversations and concluded that an image was designed to titillate the recipient. I don't think there's a lot of difference between that final dos factor and the way this court actually defines lascivious exhibition, just as a straight-up statutory matter. I'd like to turn to the defendant's Franks challenge. Since the defendant has basically conceded that there's probable cause, I'll just go straight to the Franks challenge. The district court rejected the defendant's Franks challenge on all three fronts, on falsity, on intentionality, on the materiality. With respect to falsity, the district court concluded that the affidavit repeats essentially verbatim the tip. The user of the IP address needed to access the website to get to the online child sex and abuse material. He needed to do it through a website. That's a finding of fact that is reviewed for clear error. The defendant has offered his own subjective interpretation of the tip documents, but that's not enough to show clear error on appeal. Both parties cite this court's cases in Moody and Pulley, and I think they're instructive in a few different ways. Number one, they highlight that a challenger of a statement under Franks can't just offer their own subjective interpretation of a line in an affidavit and thereby show clear error, but also those cases demonstrate that affidavits are not written by legal technicians, they're not written by lawyers, and they're supposed to be construed in a common sense, non-technical way. I think the defendant's exegesis of the tip versus the affidavit really just runs counter to those principles. So that's falsity. The district also rejected the challenge based on intentionality. The court concluded everything in the tip and the affidavit is consistent. Because again, the defendant had to access the website to access the material as the tip reported. So the defendant hasn't showed clear error with respect to those counts, and I can move on to another subject if the court has any questions with respect to the Fourth Amendment issue. I'd like to just address very briefly the defendant's McCauley purpose argument. What did you call that argument? The McCauley purpose argument. This is whether the defendant used the minors to engage in sexual activity for the purpose of... He didn't argue this. He argued this in his briefs. Okay, yeah, that's fine, but he didn't argue this morning. He didn't, and I'll just be very brief. All the videos that I recounted in the production receipt counts were created and sent because the defendant asked for them. He asked for very specific things, and he received them pretty much to a T over a dozen times in the production and receipt counts. The defendant says, send me something, record something, take a picture, do it this way, do it that way, do it with a normal camera, don't send a self-destruct video. If you don't do it properly, I'll make you again. The evidence of purpose here... He also said, I'll punish you, and the punishment often involves sexual conduct. That's correct. I think the evidence here, at the very least, that his significant purpose was to use the minors to engage in sexual activity for the purpose of recording a video, if not his sole purpose, is very clear. I'd be happy to answer any other questions your honors may have. Thank you. All right, Mr. Robbins. I'm not going to go back to the Fourth Amendment issue, but I do want to talk about lasciviousness for just a minute. What my brother counsel for the government says is that lasciviousness only affects two counts. What he means by that is the government did not itself make a lasciviousness argument with respect to some of the other counts. That's not the point. The point is whether the lascivious exhibition is an element of every count, such that an erroneous jury instruction could affect every count. That doesn't turn on what they happened to argue. But in the jury instruction, didn't the court say to instruct the jurors that they may consider these factors? Yes. So he didn't say that they were mandatory, and he didn't say that they were exhaustive. He said they may. That's correct, Judge. And I think your request below was that he charge Healy, and he rejected that. Is that correct? Yes. Well, we asked him not to charge the Dost factors. But we also said, and this is important, if you're going to charge the Dost factors, which include the nudity, and if you're going to tell them to give it any weight you want, you must tell them under Quartet that nudity alone is not enough. And the defense asked for that, and the judge refused. Now what's telling is, and this is important, Judge Benjamin. I asked him to charge the language from Healy from the D.C. Circuit. Well, they did ask. Which is now, I think the D.C. Circuit is looking at it again. No, they already did, and they reaffirmed it. Okay. But let me be clear. The judge refused the defense instruction to tell the jury you may not base your decision on nudity alone. He refused to do that. Instead, he said almost the opposite. He said you can use any factor you want and give it any weight that you want. I think Judge Nehemiah said this earlier, but this isn't a nudity alone case. You're right. I would understand your argument better if this was a nudity alone case, but this isn't a nudity alone case. You're quite right about that, Judge Benjamin. There are other ways the jury could have decided it, and therefore there's a burden that falls to the government under ordinary harmless error principles to show that the jury must have chosen one of those other factors. But tellingly, the government, in its brief, never argues that point. They never make any harmless error argument. So as the case comes to the court today on this. They maintain there was no error. They say the DOS factors are used by many courts, and that the DOS factors are only buried in a bigger definition of lasciviousness. And at bottom, the jury has to decide what is lascivious. Yes. Which is an English word, of course, that has meaning. Yes, of course, Judge Nehemiah. But they say the DOS factors are used by many courts. I've gone to the jury instructions in every one of the cited cases. And in every case that the government relies on to say the DOS factors are okay, in every one, the jury was told nudity alone is not enough. Every case. We asked for the same thing. Judge refused it. The burden, therefore, falls to them, Judge Benjamin, picking up on your point. The burden falls to them to say, oh, well, on this count, they must have used this factor. On this count, they must have used a third DOS factor. They wouldn't have used nudity, even though nudity was present in every single case. We have to view the facts in a criminal case after there's been a conviction. We review the facts in the light most favorable to the government in every instance. Correct. You're saying that the burden switches or something. We review the facts in the light most favorable to the government. That's a sufficiency case. But that's the way we review the facts. In a sufficiency case. You're saying it's something different in the case of a specific instruction. Yes, if an instruction is wrong. And we review instructions, generally, for abuse of discretion. And we review all of them together, holistically. Yes. All those kinds of things. And we give broad discretion to the trial court. He's there on the spot. You've got a trial judge here that has been a trial judge for 30 or 40 years. Indeed, he has. He's been around the Horn a few times. Yes, I know. I've appeared before him a few times. But the court. You're going to have to wind up. We're over time. Okay. Very simply. If you agree with me that we were entitled to a nudity alone is not good enough, as every other circuit has said, then in that event, they have to show that it didn't make a difference. They haven't even made that argument. There's no harmless error argument in their brief as to the DOS factors mistakes. And for that reason, and because it affects every count in the case, there should at least be a new trial. Thank you very much. Thank you. Is Mr. Shapiro, is that you? Oh, then we'll come down and greet counsel. There's going to be a change of counsel. I was going to suggest we just go on to the next case, but we're going to have a switch. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Robert B. King, DeAndrea Gist Benjamin